Marianne Dugan (OSB # 93256)
Internet e-mail address mdugan@mdugan.com
259 E. 5th Ave., Suite 200-D
Eugene, OR 97401
(541) 338-7072
Fax no. 866-650-5213
    Of Attorneys for Plaintiff

FILED 15 SEP '11 12:55 USDC-ORE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

EFRAIN REYNAGA,

    Plaintiff,

v.

ROSEBURG FOREST PRODUCTS;
TIM BRANAUGH; HANK SNOW; and
JON MCAMIS,

    Defendants.

No.   11 - 6282 - AA

COMPLAINT

(Race Discrimination Claim under
Title VII and 42 U.S.C. 1981;
State Claim for Discrimination
Based upon Race)

JURY TRIAL REQUESTED

## JURISDICTION AND VENUE

1.    This is a civil action for damages and attorney's fees, for race-based hostile

environment and wrongful discharge claims under Title VII of the Civil Rights Act of 1964, 42

U.S.C. 2000e ("Title VII"), and 42 U.S.C. 1981; and for state-law claims for race-based

discrimination under ORS 659A.030(1)(a)(b). The claims arise from 1) Roseburg Forest

Product's termination of plaintiff's employment in January 2010; 2) coworker Tim Branaugh's

PAGE 1 - COMPLAINT - RACE DISCRIMINATION

ORX 600006842

creation of a hostile work environment and Roseburg Forest Product's failure to adequately respond to the Reynagas' complaints about that hostile work environment; 3) discrimination regarding reinstating full-time shifts; and 4) other incidents that occurred at Roseburg prior to their termination.

2.    Jurisdiction for the federal claims exists under 28 U.S.C. 1331 because this action arises under the laws of the United States; and 28 U.S.C. 1343, because this action alleges a violation of the civil rights statutes.

3.    Supplemental jurisdiction for the state claims exists under 28 U.S.C. 1367.

4.    Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. 1391(b) in that this is a civil action wherein jurisdiction is not founded on diversity of citizenship and plaintiff's claims arise within this judicial district.

## PARTIES

5.    Defendant Roseburg Forest Products is and was at all material times an Oregon Corporation authorized to do business and doing business in Douglas County, Oregon, owning and operating a lumber mill in Douglas County (hereinafter "the mill").

6.    Defendant Tim Branaugh was at all relevant times plaintiff's coworker at the mill.

7.    Defendant Jon McAmis was at all relevant times Director of Human Resources and Training for Roseburg Forest Products, with authority to hire, fire, discipline, promote plaintiff, and to assign plaintiff his job duties; and with authority to establish and/or enforce rules in the mill workplace to address a racially hostile work environment.

8.    Defendant Hank Snow was at all relevant times the Vice President for Human Resources for Roseburg Forest Products, with authority to hire, fire, discipline, promote plaintiff,

PAGE 2 - COMPLAINT - RACE DISCRIMINATION

and to assign plaintiff his job duties; and with authority to establish and/or enforce rules in the mill workplace to address a racially hostile work environment.

9.    At all material times, plaintiff was an employee at the mill.

10.   Plaintiff is Hispanic and also was born in Mexico, and as such is a member of a class protected under Title VII and 42 U.S.C. 1981.

11.   The actions and omissions alleged in this complaint were taken by employees, officers, and/or agents of the owner/operator of the mill, within the scope of the authority of those employees, officers, and/or agents, and therefore were actions and omissions of the defendants.

## Factual Background

12.   Plaintiff Efrain Reynaga was born in Mexico and moved to the United States several decades ago and has been a well-respected millwright for decades. He is of Hispanic descent, and he and his son are the only Hispanics who were part of the millwright/maintenance staff at Roseburg Forest Products.

13.   Plaintiff worked for the company for about five years.

14.   Before he was terminated January 13, 2010, Mr. Reynaga had always received good evaluations and was a valued worker, and was performing his job well.

15.   Mr. Reynaga had ongoing concerns arising from coworker Branaugh's physical and verbal aggression towards him; Branaugh's known history of physical aggression and violence; his racist statements in the workplace; and Roseburg's failure to take action on Mr. Reynaga's complaints about Branaugh's behavior, leading to a reasonable concern about retaliation; all based on race and national origin as well as retaliatory intent for complaining

PAGE 3 - COMPLAINT - RACE DISCRIMINATION

about such behavior. This past behavior is discussed in further detail below.

16.     Roseburg Forest Products was made aware of these concerns and adverse events involving Mr. Branaugh, yet Roseburg Forest Products failed to take appropriate actions in response to Mr. Reynaga's complaints.

17.     On January 13, 2010, Mr. Reynaga advised Roseburg Forest Products once again, by letter, about these concerns, and stated that, for his own safety, he could not return to work if Mr. Branaugh was going to be in the sawmill when he was scheduled to work; but that if Mr. Branaugh was not scheduled to be in the sawmill he would work his shift.

18.     Mr. Reynaga arrived at work on January 13 and learned that Mr. Branaugh was going to be in the sawmill, and he left the job site.

19.     Efrain Reynaga was suspended and then was terminated January 18, 2010.

**November 2008 incident**

20.     A November 2008 is within the four-year statute of limitations for 42 U.S.C. 1981, and also relevant to demonstrate a pattern of behavior.

21.     On November 12, 2008, Efrain Reynaga was at home. A narcotics task force (DINT) showed up at the mill with dogs. They first hit on the locker of a white millwright (Mike Martin). DINT left it up to Roseburg as to how to deal with that. Roseburg called Martin to tell him that his locker was being opened.

22.     Defendant Jon McAmis, and the safety director, Kelly White, broke into Efrain Reynaga's locker, even though Mr. Reynaga's son (who was working at the mill) told them he had a key, and the lock had Efrain Reynaga's phone number on it. They did not call Mr. Reynaga to tell him his locker was being opened. They found nothing in the locker.

PAGE 4 - COMPLAINT - RACE DISCRIMINATION

**Hostile Work Environment by Tim Branaugh, Tolerated by Employer**

23.     Defendant Tim Branaugh was the lead millwright on graveyard shift.

24.     Branaugh is physically aggressive and large.

25.     Four other workers, together with Branaugh, called themselves the "diesel club."

26.     Branaugh and others often spoke at the mill about minorities having special rights, made disparaging remarks about Mexican nationals and Hispanics in general, and used racial epithets.s

27.     Tim Branaugh once used the word "niggers" in front of the shift supervisor and when the supervisor protested, Branaugh said "I have the right to say what I want." The supervisor threw up his hands and left.

28.     In September 2009 Efrain Reynaga got elk hunting tags, for the second year in a row.  Branaugh did not draw a tag, and started harassing Mr. Reynaga about it.  Tim said something to the effect of "I'm a true believe that we should close the borders to keep motherf***ers like you from coming up here and killing our elk."

29.     At one point the company offered Mr. Reynaga lead on the graveyard shift but he declined because he knew it would rock the boat and cause more trouble.

30.     Mr. Reynaga was repeatedly assigned some of the harder and dirtier jobs at the mill.

31.     October 14, 2009, Mr. Reynaga and defendant Branaugh had a confrontation over who should work on a particular piece of machinery.  In his five years at Roseburg, Efrain had never had a cross word with anyone except Branaugh, but things became heated.

32.     The day after this incident, Mr. Reynaga's son talked to the Maintenance

PAGE 5 - COMPLAINT - RACE DISCRIMINATION

Supervisor and told him Branaugh had been harassing his dad. Nothing happened, except that Branaugh called Mr. Reynaga into his office and told him his son would never make it to graveyard shift.

33.    Two days later, having learned that Mr. Reynaga's son had bid for graveyard, defendant Branaugh went to another worker and told him to bid for the job. The worker told him the bid was not even available any more. Branaugh said something to the effect of "That doesn't matter – things have a way of changing around here real quick."

34.    On October 19, 2009, Mr. Reynaga told his supervisors that Branaugh was a problem and was harassing him. They said something like "Yes, he's been a problem for years," and promised to do something. But the company did not do anything.

35.    Mr. Reynaga was extremely concerned that Branaugh and his "gang" were going to physically harm him at work. The work involves dangerous machinery and requires putting extreme trust in coworkers. Mr. Reyanga had seen Branaugh get very aggressive over minor issues, such as losing a quarter in the potato chip machine in the break room.

36.    On December 3, 2009, Efrain Reynaga filed a written complaint with the company. Still nothing was done to remedy the situation.

37.    On December 15, 2009, Mr. Reynaga received an email from his supervisor stating that "on Friday nights when the Planer runs an OT shift, please support their needs for a millwright. Tim B. [Branaugh] will chase the planer Friday nights and **when he goes home** is when help might be needed. Make sure your radios are with you at all times. " However, Mr. Reynaga knew that in reality the crews often have to work overtime so that they would overlap with Branaugh.

PAGE 6 - COMPLAINT - RACE DISCRIMINATION

38.     At one point there was a "whistle" (a request for help from all millwrights) but the white millwrights stayed in the break room and refused to help Mr. Reynaga and his son.

39.     Mr. Reynaga would walk by millwrights and say "How's it going" and would be ignored. He knew they hated his guts for complaining, and he was very concerned for his safety.

40.     On January 4, 2010, Branaugh left in the break room a printed-out email from his wife for people to read, which states that Obama is an illegal alien and complains that "our borders are like sieves." This made Mr. Reynaga feel even more concerned about the hostility and harassment at work.

41.     When they overlapped (which was often), the Reynagas and Branaugh would be in close proximity and had to share the same parts warehouse, break room, and restroom.

42.     On January 9, 2010, Branaugh was at work when Mr. Reynaga was at work, and Mr. Reynaga left the job site. Mr. Reynaga's son sent an email to their supervisors, stating: "Dick and Terry. Efrain and I Richard Reynaga. Arrived for work to find Timm B here! We will not work in a hostile work environment. We will report to our shift on Wednesday Jan, 13, 2010. Unless we hear otherwise."

## Other Discriminatory Treatment

43.     Tim Branaugh and four other millwrights were on one crew and Efrain Reynaga and his son Richard Reynaga (by themselves) were on another. Those five got the same amount of work as the two Reynagas alone.

44.     On December 30, 2009, the company put 16 millwrights back to full-time work (from part-time) but did not do so for Efrain and Richard Reynaga.

PAGE 7 - COMPLAINT - RACE DISCRIMINATION

45.     Efrain Reynaga was denied a company email account when other millworkers were given one.

46.     Efrain Reynaga was told he had to file written reports on repairs when other millwrights did not have to; and was harassed about the time he took to do repairs when others were not harassed for that work.

47.     During the shutdown Thanksgiving 2009 Efrain and Richard Reynaga were required to work at the powerhouse while the five white graveyard millwrights got to stay at the better job.  The powerhouse is a dirty, nasty job, with confined spaces, and it is more dangerous.

48.     Several years ago, Efrain Reynaga suffered a broken leg at work when a coworker turned on a machine at the wrong time.  Mr. Reynaga was made to go up and down stairs with his broken leg when others were allowed to stay home with similar injuries.

49.     In January 2010 after Mr. Reynaga filed his complaint they stopped having work orders available for Mr. Reynaga and his son; they would just have to see what was hanging up on the board for them to do.

50.     Plaintiff filed a complaint with the Bureau of Labor and Industries and the federal EEOC within the limitations period established by law for the Title VII and state law claims alleged herein; received right to sue letters from those entities; and filed this complaint within the time limits established by law for filing suit after receiving a right to sue letter.

### FIRST CLAIM FOR RELIEF
### Hostile Work Environment

### Count 1
### 42 U.S.C. 1981 – All Defendants

51.     Plaintiff adopts by reference the allegations in the foregoing paragraphs.

PAGE 8 - COMPLAINT - RACE DISCRIMINATION

52.     Throughout his employment at the mill, because of his race, plaintiff was subjected to a racially hostile work environment by defendant Tim Branaugh, and subjected him to other unwelcome conduct as further described herein.

53.     Branaugh's racial epithets and conduct were unwelcome to plaintiff.

54.     The racial epithets and conduct were sufficiently severe or pervasive to alter the conditions of plaintiff's employment to create an abusive work environment.

55.     Although plaintiff complained about the racially hostile work environment, defendants McAmis, Snow, and Roseburg Forest Products did not take reasonable steps to remedy the situation.

56.     The acts and omissions of defendants violated the civil rights of plaintiff under 42 U.S.C. 1981.

57.     As a direct and proximate result of the acts and omissions of defendants, plaintiff has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including loss of past wages and other income; loss of future earning capacity; mental anguish, emotional distress, depression, stress, anxiety, and humiliation.

58.     The acts and omissions of defendants were wilful and wanton or otherwise in reckless disregard of plaintiff's rights.  Punitive damages should be awarded to plaintiff and assessed against each of the individual defendants to punish defendants for their acts and omissions and to deter defendants and others from engaging in such conduct in the future.

59.     Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

PAGE 9 - COMPLAINT - RACE DISCRIMINATION

60.     Plaintiff is entitled to a jury trial.

## Count 2
### Hostile Work Environment – Title VII – All Defendants

61.     Plaintiff adopts by reference the allegations in the foregoing paragraphs.

62.     Throughout his employment at the mill, because of his race, plaintiff was subjected to a racially hostile work environment by defendant Tim Branaugh, and subjected him to other unwelcome conduct as further described herein.

63.     Branaugh's racial epithets and conduct were unwelcome to plaintiff.

64.     The racial epithets and conduct were sufficiently severe or pervasive to alter the conditions of plaintiff's employment to create an abusive work environment.

65.     Although plaintiff complained about the racially hostile work environment, defendants McAmis, Snow, and Roseburg Forest Products did not take reasonable steps to remedy the situation.

66.     The acts and omissions of defendant Roseburg Forest Products violated the civil rights of plaintiff under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e.

67.     As a direct and proximate result of the acts and omissions of defendant Roseburg, plaintiff has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including loss of past wages and other income; loss of future earning capacity; mental anguish, emotional distress, depression, stress, anxiety, and humiliation.

68.     Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

69.     Plaintiff is entitled to a jury trial.

PAGE 10 - COMPLAINT - RACE DISCRIMINATION

## SECOND CLAIM FOR RELIEF
### Adverse Employment Decisions

**Count 1 - 42 U.S.C. 1981 - Defendants Roseburg Forest Products, McAmis, and Snow**

70.    Plaintiff adopts by reference the allegations in the foregoing paragraphs.

71.    At all material times, plaintiff was performing his job in a satisfactory manner.

72.    As detailed in this complaint, plaintiff has suffered adverse employment actions which employees outside of plaintiff's protected class have not suffered.

73.    Defendant Roseburg Forest Products, McAmis, and Snow terminated plaintiff's employment in January 2010.

74.    The reason those defendants terminated plaintiff's employment was because of plaintiff's race and/or color and/or national origin; and/or because he made complaints about being discriminated against.

75.    The actions of defendants Roseburg, McAmis, and Snow described herein constitute adverse employment decisions.

76.    In taking these described actions, those defendants treated plaintiff differently from other persons outside his protected class.

77.    Those defendants displayed discriminatory animus towards plaintiff.

78.    The acts and omissions set forth in this complaint were intentional and discriminatory because of plaintiff's race and/or color and/or national origin and/or because he made complaints about discrimination.

79.    The acts and omissions of those defendants violated the civil rights of plaintiff under 42 U.S.C. 1981.

80.    As a direct and proximate result of the acts and omissions of those defendants,

PAGE 11 - COMPLAINT - RACE DISCRIMINATION

plaintiff has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including loss of past wages and other income; loss of future earning capacity; mental anguish, emotional distress, depression, stress, anxiety, and humiliation.

81.     The acts and omissions of defendants were wilful and wanton or otherwise in reckless disregard of plaintiff's rights.  Punitive damages should be awarded to plaintiff and assessed against each of the defendants to punish defendants for their acts and omissions and to deter defendants and others from engaging in such conduct in the future.

82.     Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

83.     Plaintiff is entitled to a jury trial.

## Count 2
### Title VII - Defendant Roseburg Forest Products

84.     Plaintiff adopts by reference the allegations in the foregoing paragraphs.

85.     At all material times, plaintiff was performing his job in a satisfactory manner.

86.     As detailed in this complaint, plaintiff has suffered adverse employment actions which employees outside of plaintiff's protected class have not suffered.

87.     Defendant Roseburg terminated plaintiff's employment in January 2010.

88.     The reason defendant Roseburg terminated plaintiff's employment was because of plaintiff's race and/or color and/or national origin; and/or because he made complaints about being discriminated against.

89.     Defendant Roseburg's actions described herein constitute adverse employment decisions.

PAGE 12 - COMPLAINT - RACE DISCRIMINATION

90.     In taking these described actions, defendant Roseburg treated plaintiff differently from other persons outside his protected class.

91.     Defendant Roseburg displayed discriminatory animus towards plaintiff.

92.     The acts and omissions set forth in this complaint were intentional and discriminatory because of plaintiff's race and/or color and/or national origin and/or because he made complaints about discrimination.

93.     The acts and omissions of defendant Roseburg violated the civil rights of plaintiff under Title VII.

94.     As a direct and proximate result of the acts and omissions of defendant Roseburg, plaintiff has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including loss of past wages and other income; loss of future earning capacity; mental anguish, emotional distress, depression, stress, anxiety, and humiliation.

95.     Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

96.     Plaintiff is entitled to a jury trial.

### THIRD CLAIM FOR RELIEF
### (Retaliation)

### Count 1
### 42 U.S.C. 1981 – All Defendants

97.     Plaintiff adopts by reference the allegations in the foregoing paragraphs.

98.     Plaintiff complained about the discriminatory acts and hostile work environment alleged herein.

99.    After plaintiff complained, all defendants took additional actions which were harmful to plaintiff, as alleged herein, and did so in retaliation for plaintiff's complaints.

100.    In taking these described actions, defendants treated plaintiff differently from other persons who had not made such complaints.

101.    Defendants displayed discriminatory animus towards plaintiff for making the complaints.

102.    The acts and omissions set forth in this complaint were intentional and discriminatory because of plaintiff's complaints.

103.    The acts and omissions of defendants violated the civil rights of plaintiff under 42 U.S.C. 1981.

104.    As a direct and proximate result of the acts and omissions of defendants, plaintiff has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including mental anguish, emotional distress, depression, stress, anxiety, and humiliation.

105.    The acts and omissions of defendants were wilful and wanton or otherwise in reckless disregard of plaintiff's rights. Punitive damages should be awarded to plaintiff and assessed against each of the defendants to punish defendants for their acts and omissions and to deter defendants and others from engaging in such conduct in the future.

106.    Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

### Count 2
### Title VII – Defendant Roseburg Forest Products

107.    Plaintiff adopts by reference the allegations in the foregoing paragraphs.

PAGE 14 - COMPLAINT - RACE DISCRIMINATION

108. Plaintiff complained about the discriminatory acts and hostile work environment alleged herein.

109. After plaintiff complained, defendant Roseburg Forest Products took additional actions which were harmful to plaintiff, as alleged herein, and did so in retaliation for plaintiff's complaints.

110. In taking these described actions, defendant treated plaintiff differently from other persons who had not made such complaints.

111. Defendant displayed discriminatory animus towards plaintiff for making the complaints.

112. The acts and omissions set forth in this complaint were intentional and discriminatory because of plaintiff's complaints.

113. The acts and omissions of defendant Roseburg violated the civil rights of plaintiff under Title VII.

114. As a direct and proximate result of the acts and omissions of defendant Roseburg, plaintiff has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including mental anguish, emotional distress, depression, stress, anxiety, and humiliation.

115. Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## FOURTH CLAIM FOR RELIEF
### State Law – Race Discrimination – Defendant Roseburg Forest Products

116. Plaintiff adopts by reference the allegations in the foregoing paragraphs.

117. Defendants' actions alleged herein violated ORS 659A.030(1)(a)(b), and

PAGE 15 - COMPLAINT - RACE DISCRIMINATION

defendant Roseburg Forest Products is liable for those actions.

118.    As a direct and proximate result of the acts and omissions of defendants, plaintiff

has suffered and sustained damages, continues to suffer and sustain damages, and in the future

will suffer and sustain damages, in amounts to be proven at trial, including loss of past wages

and other income; loss of future earning capacity; mental anguish, emotional distress,

depression, stress, anxiety, and humiliation.

119.    The acts and omissions of defendants were wilful and wanton or otherwise in

reckless disregard of plaintiff's rights.  Punitive damages should be awarded to plaintiff and

assessed against defendant Roseburg Forest Products to punish defendants for their acts and

omissions and to deter defendants and others from engaging in such conduct in the future.

120.    Plaintiff is entitled to an award of reasonable attorney fees and costs pursuant to

ORS 20.107 and/or ORS 659A.885(1) .

121.    Plaintiff is entitled to a jury trial.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests a jury trial and demands judgment in his favor and

against defendants for the relief sought herein; for his reasonable costs and attorney fees; and for

any other relief deemed appropriate by the court.

Respectfully submitted September 13, 2011.

Marianne Dugan, OSB # 93256
Attorney for Plaintiff
259 E. 5th Ave., Ste 200-D
Eugene, Oregon 97401
(541) 338-7072

PAGE 16 - COMPLAINT - RACE DISCRIMINATION